S. COFFMAN *et al.*

*v.*

D. C. CAMPBELL & CO.

1. DRAFT—*acceptance, whether conditional.* A telegram agreeing to accept a person's draft for a certain sum, "for stock," is not a conditional contract, but an absolute undertaking to accept and pay the same; and a party discounting the draft, on the faith of such telegram, is entitled to recover the amount of the party so agreeing to accept.

2. SAME—*condition as to acceptance must be clearly expressed.* It is the duty of a party agreeing to accept a draft to be drawn on him to express clearly the condition of his acceptance, if he desires to make it conditional, and the burden is upon him to show it, and not upon the holder of the bill.

3. In a telegram to a party, in relation to a draft, that the person sending the dispatch "will pay A B's draft, twenty-three hundred dollars, for stock," the words, "for stock," subserves no purpose as between the payee and the acceptor. At most, those words are but an indication of the nature of the consideration as between the drawer and the acceptor.

4. USAGE—*requisites.* An usage of trade must be generally known and established, and so well settled and so uniformly acted upon as to raise a fair presumption that it was known to both contracting parties, and that they contracted in reference to it and in conformity to it. Proof of a particular usage among commission merchants, in Chicago, in respect to the acceptance of drafts, not extending to bankers, nor to a foreign State where a draft is negotiated, fails to establish any binding usage.

APPEAL from the Circuit Court of Cook county; the Hon. HENRY BOOTH, Judge, presiding.

Messrs. BARGE, DENSLOW & DIXON, for the appellants.

Messrs. FULLER & SMITH, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was *assumpsit,* in the Cook circuit court, brought by D. C. Campbell & Co., doing business as bankers, plaintiffs, and against L. T. Smith, S. Coffman and N. B. Ream, defendants, on their alleged acceptance of a certain bill of exchange for twenty-three hundred dollars, drawn upon them by one

A. Harper, and on which plaintiffs advanced the money therein specified.

The facts are, briefly, these: On April 5, 1872, plaintiffs sent a telegram to defendants, as follows: "Will you honor draft drawn by A. Harper for twenty-three hundred dollars?" On the following day, plaintiffs received from defendants this telegram:

> "*U. S. Yards, Ill., April* 6, 1872.
>
> "*To D. C. Campbell:*
>
> "Will pay A. Harper draft, twenty-three hundred dollars, for stock.
>
> "SMITH, COFFMAN & REAM."

A. Harper, on receipt of this telegram by plaintiffs, on April 6, 1872, drew this draft:

> "*Centreville, April* 6, 1872.
>
> "At sight, pay to the order of D. C. Campbell & Co. twenty-three hundred dollars, value received, and charge to account of                                        A. HARPER.
>
> "*To Smith, Coffman & Ream, Union Stock Yards, Chicago.*"

This draft, when presented to the defendants, they refused to accept; hence this action.

The declaration, in the several counts, alleged the necessary facts with legal precision and in due form. The general issue was put in to the first, fourth and to the common counts, and a general demurrer to the second and third counts, which was overruled, and the general issue pleaded thereto, and four special pleas, averring, in substance, in the second plea, or first special plea, that the draft was not applied on the purchase or for payment of stock, nor did defendants receive any stock therefor, and, in the second special plea, that the bill of exchange was not drawn by Harper, and the money obtained of plaintiffs to pay for stock already theretofore purchased by Harper and shipped to the defendants. The third special plea averred more in detail the arrangement between Harper and defendants as to acceptance of Harper's drafts, provided the same were used in the purchase and payment of stock by Harper,

and by him shipped to defendants; and the remaining fourth special plea averred that, neither before the making of the draft or conditional acceptance, or since, did defendants receive from Harper or plaintiffs any stock for which the draft was drawn, or on account of which said conditional acceptance was made.

To these special pleas there was a demurrer, which was sustained. The remaining issues were tried by a jury, who, under instructions, returned a verdict for the plaintiffs for the amount of the draft and interest thereon. A motion for a new trial was denied, and judgment rendered on the verdict, to reverse which defendants appeal.

These rulings bring up the important question, was the acceptance of this draft by defendants conditional?

It is argued by appellants, if there was any contract, it was one of conditional acceptance, or of an agreement to accept on the happening of a contingency, namely: the shipping of stock, which not having happened, there can be no recovery, and the burden of proof is on the plaintiffs.

It will be seen, by reference to the terms of the acceptance, there is no intimation in it that stock of any kind was to be shipped,—that was no part of the contract, and it nowhere appears that plaintiffs proposed to advance money, or did advance any, on the faith of any shipments of stock. It nowhere appears that appellants, when they telegraphed their agreement to accept Harper's draft, suggested they would not pay it unless it was accompanied by a bill of lading, or until a shipment of stock was made, or that such was their intention. Had it been their intention, they certainly should have made that a part of their acceptance; it should have been one of the terms, if fair dealing was intended, and it was their duty so to have informed appellees. It is the duty of a party, under such circumstances, to express clearly the condition of his acceptance, if he designs to make it conditional, and the burden is upon him to show it, and not upon the holder of the bill. Chitty on Bills, 303.

If an acceptor does not desire to become absolutely liable, it is a very easy matter so to word the contract. It is his duty to express himself and his intentions in such terms as to leave no doubt his acceptance was conditional, and, as it is his business so to express himself, the interpretation of the agreement must be against him, on a familiar principle. *United States* v. *Bank of Metropolis*, 15 Peters, 396; *Tapey* v. *Church*, 4 Watts & Serg. 346.

The rule, we believe, is generally accepted and understood to be, if a party proposes to make a conditional acceptance only, and commits that acceptance to writing, he must be careful to express fully the condition therein. He is not permitted to use general terms, and then exempt himself from liability by relying upon particular facts which may have some connection with the condition expressed, for the reason that the particular fact is, of itself, susceptible of being made a distinct condition. 15 Peters, 377, *supra*. It is also held, in the case of the acceptance of commercial paper, that which can be made a distinct condition must be so made, and nothing out of the condition can be inferred, unless it be in a case where the words used are so ambiguous as to make it necessary that parol evidence should be resorted to, to explain them. Then, the onus of proof would be on the acceptor, and the proof would be of no avail if the holder, or any person under whom he claims, took the bill without notice of such condition, giving a valuable consideration therefor. Ibid.

It does not appear to us that appellants were careful to express any condition to their acceptance, if any was intended. They reply to the telegram, that they will pay A. Harper's draft for twenty-three hundred dollars, for stock. This is an absolute acceptance, and must have been perfectly satisfactory to appellees, who knew Harper was buying stock; but there is no intimation or suggestion in the acceptance that stock was to be shipped to the acceptors, or that they should have any control of the stock, by bill of lading or otherwise. The use of the terms, "for stock," in the acceptance, was not for

the benefit or to subserve any purpose of the payee and of the acceptors, as between them, but was important in the arrangement existing between the drawer and acceptors in the settlement of their dealings. This is more reasonable than it is to consider the term a modification of the acceptance. The acceptance is absolute they will pay Harper's draft for twenty-three hundred dollars. The words, " for stock," are, at most, but an indication of the nature of the consideration as between Harper, the drawer, and these appellants, as acceptors, and was of no importance or interest to appellees. It was immaterial to them what was the consideration moving between Harper and appellants. If the words, " for stock," amount to a condition that stock must be shipped, then it would follow it was the duty of appellees, who cashed the draft, to see that the money was actually paid for stock, to the seller of the stock, which no one will pretend. It was not the business of appellees to make any such inquiry, and is not compatible with the relation they hold to the transaction.

It is urged by appellants that, by the usage of trade, the words, " for stock," mean that the money was to be paid for stock, and this stock be consigned to the acceptors of the draft, accompanied by a bill of lading. Two of the appellants testified as to this supposed usage, as they understood it, among commission merchants in Chicago, but not as among bankers, and in a foreign State, where this draft was negotiated. This proof does not establish usage as defined by this court in *Bissell* v. *Ryan,* 23 Ill. 566, where it was said, an usage must be generally known and established, and so well settled and so uniformly acted upon, as to raise a fair presumption that it was known to both contracting parties, and that they contracted with reference to it and in conformity with it. The evidence fails to establish any usage.

It is unnecessary to pursue this discussion further. The justice and law of the case are with appellees. We have no fault to find with the manner in which the instructions were disposed of, and the judgment must be affirmed.

*Judgment affirmed.*

Mr. Justice Dickey: I can not concur in this conclusion. I think the telegram plainly shows that the money promised by the appellants was to be paid only on the receipt of stock bought with the money.

Mr. Justice Craig: I do not concur with the majority of the court in the decision of this case, but I fully agree with Mr. Justice Dickey in his conclusion.