EDWARD W. CONVERSE ET AL.

v.

ALBERT HARZFELDT ET AL.

11   173
70   231
11     173
100   1424

1. CUSTOM.—A custom, to be binding, must be uniform, long established, reasonable, generally acquiesced in, and so well known as to induce the belief that the parties contracted with reference to it, when nothing is said to the contrary.

2. INSTRUCTION AS TO CUSTOM.—An instruction as to the rights of parties being affected by a custom, is erroneous if it fails to direct the jury in respect to the qualifications which the law regards as indispensable to a valid and binding custom, such as may properly be resorted to in ascertaining the intention of the parties.

3. SALE BY SAMPLE.—If the sale was by sample, so that an implied undertaking arose that the bulk should correspond with the sample, and if it did not, the contract could be rescinded by the purchaser offering within a reasonable time to return the goods purchased.

4.  ENTIRETY OF SALE.—The sale being entire of six cases of goods, the purchaser, in order to rescind the contract, must offer to return all the goods purchased; an offer to return a portion only does not amount to a rescission.

APPEAL from the Superior Court of Cook county. Opinion filed May 31, 1882.

Messrs. McCAGG & CULVER, for appellants; that a party can not rescind a contract and at the same time retain a part of the consideration, but must restore the other party to the same condition as before the contract, cited Buchanan v. Horney, 12 Ill. 336; Donner v. Smith, 32 Vt. 1; Tisdale v. Buckmore, 33 Me. 461; Kimball v. Cunningham, 4 Mass. 504; Conner v. Henderson, 15 Mass. 319.

It is not enough, to rescind the contract, to give notice to the other to take his goods, but the party must himself send them back: Norton v. Young, 3 Greenl. 30; Buchanan v. Horney, 12 Ill. 336.

A mere proposal to return the goods, they not being present, is not a sufficient tender: Carter v. Walker, 2 Rich. 40.

As to what constitutes a custom or usage, and proof of the same: Wood v. Wood, 1 C. & P. 59; Scudder v. Bradbury, 106 Mass. 442; Adams v. Otterback, 15 How. 544; Austill v. Crawford, 6 Ala. 335; Cook v. Fiske, 12 Gray, 491; Foye v. Leighton, 22 N. H. 76; Berkshire Woolen Co. v. Proctor, 7 Cush. 417; Adams v. Pittsburg Ins. Co. 76 Pa. St. 411; Dixon v. Dunham, 14 Ill. 327; Sweet v. Leach, 6 Bradwell, 212.

It must be shown that the parties had actual knowledge of the existence of the custom, or that it was so general that they may fairly be presumed to have known it: Howard v. Great Western Ins. Co. 109 Mass. 389; Berkshire Woolen Co. v. Proctor, 7 Cush. 417; Dixon v. Durham, 14 Ill. 327; Sweet v. Leach, 6 Bradwell, 212.

The instruction should have stated the requirements of a custom: Crawford v. Clark, 15 Ill. 567; Sweet v. Leach, 6 Bradwell, 215; Wilson v. Bauman, 80 Ill. 493.

It was error to allow interest on the claim: Madison Co. v. Bartlett, 1 Scam. 69; Sammis v. Clark, 13 Ill. 544; City of Pekin v. Reynolds, 31 Ill. 532.

In a sale of goods where there is no deceit, and they are

Converse v. Harzfeldt.

open to inspection, if the purchaser does not avail himself of these means and opportunities, he can not be heard to say that he was misled by the vendor's representations: Rocchi v. Schwabacher, Sup. Ct. La. Dec. 1881; Salisbury v. Stainer, 19 Wend. 157.

Money paid upon an executory contract can not be recovered back under a count for money had and received, so long as the contract is open and unrescinded: Stevens v. Lyford, 7 N. H. 360; 2 Parsons on Contracts, 679.

Messrs. TENNEY, FLOWER & CRATTY, for appellees; that a sale by sample is an executory contract, cited Street v. Blay, 2 B. & Ad. 456; Doane v. Dunham, 65 Ill. 512; Shields v. Reibe, 9 Bradwell, 598.

A delivery to a carrier of goods sold by sample does not pass title to the purchaser, unless they are like the sample: Diversy v. Kellogg, 44 Ill. 114; Wolf v. Deitzch, 75 Ill. 205; Ellis v. Roche, 73 Ill. 280.

Notice by the purchaser that he declined to receive the goods, is sufficient to avoid liability: Doane v. Dunham, 65 Ill. 512; Ellis v. Roche, 73 Ill. 280; Grimoldy v. Wells, 10 C. P. 391; Lucy v. Mowflet, 5 H. & N. 233; Gill v. Kantman, 16 Kan. 571.

Upon the right to interest: Underhill v. Gaff, 48 Ill. 198.

McALLISTER, J. This was *indebitatus assumpsit*, brought in the court below, by Harzfeldt and Goodman, against Converse, Stanton and Davis, to recover back money which plaintiffs had paid to the defendants as the price of six cases of beaver cloth, purchased by the plaintiffs in the early part of the year 1880, of, and paid for, to the defendants, at the rate of $1.25 per yard; the whole amount so paid being $1,846.66, on the ground that the sale was by sample, with which the bulk did not correspond, for which reason the contract was rescinded and this suit brought to recover back the amount so paid, as money had and received by the defendants, to the use of plaintiffs, as if no contract had ever existed. There was a trial below resulting in a judgment against defendants in the

sum of $1,679.84, besides costs, and they bring the case here by appeal.

It appears that the plaintiffs were merchants, doing business in the city of Chicago, while the defendants were wholesale dealers in cloths in the city of New York; that the purchase in question was made in the early part of the year 1880, through one Cohen, acting as the agent of the plaintiffs, but who made it in person, at the defendants' store in New York, where the goods were at the time. Cohen was the only witness on behalf of plaintiffs as to the kind of goods purchased, and what the actual bargain was. The plaintiffs' theory of the case was, that the kind of goods purchased was what was known to the trade as regular goods; that the defendants' salesman exhibited to Cohen a case of beavers which the latter examined, and his evidence tends to show that such comprised only such goods as were called regular, and that the other five cases were to be the same. The theory of the case on the part of the defendants was, that the goods bargained for by Cohen, were specifically called old goods; that they were sold as irregular goods, the price being twelve and a half cents lower than the standard price at the time for regular goods, on account of the same being irregular.

The evidence as to what was said and done strongly preponderates in favor of the defendants' theory, there being three witnesses in their behalf, against one for the plaintiffs. The bill of the goods, made out by the defendants, was in the ordinary form, without any peculiar marks or words upon it. In order to turn the scale in their favor, the plaintiffs' counsel introduced several witnesses, who were permitted by the court, against the objections of the defendants, to give evidence tending to show that there was a custom among dealers, other than the defendants, to the effect that when the goods sold are regular, to give the purchaser a regular bill, and nothing is said; and, if the goods sold are irregular, the goods are generally put down on the bill "as are."

If the goods are irregular, the seller tells the purchaser that the goods will be sold only "as are," and so it is put down on the bill "as are."

Converse v. Harzfeldt.

There was no evidence that such custom was uniform, or long established, or was known to the parties.

The plaintiffs' counsel asked, and the court gave to the jury the following instruction: "If you shall find from the evidence, that at the time the goods in controversy were billed to the plaintiffs there existed among business houses in the same business and in the same city with the defendants, a general custom of making all bills or invoices of imperfect or irregular goods sold without any right or reclamation or claim by the buyer for the deductions in price, on account of imperfections or irregularities in weight or quality in such goods, by some words to denote that fact, as, for example, the words "as are," and if you further find that the goods in controversy were billed to plaintiffs without any such marking upon the bill or invoice, then the court instructs you that it is proper for you to consider this circumstance in connection with all the other evidence, in determining the question whether or not the goods in controversy were sold in the condition they were in, without any undertaking by defendants as to the quality or character of the goods." This instruction was erroneous upon two grounds at least; and, under the circumstances as to the evidence, must have turned the scale in favor of the plaintiffs.

1. It assumes that if there existed a mere general custom among business houses, in the same business and same city with the defendants, as to the manner of making out bills of goods sold, at the time the defendants made out the bill of the goods in question, then that custom should be considered, in determining what sort of goods, as to kind and quality, the defendants really sold to the plaintiffs, and the obligations of the former in respect thereto. The instruction omits to direct the jury, in respect to the qualifications which the law regards as indispensable to a valid and binding custom, such as may be properly resorted to, in ascertaining the intention of the parties, upon the presumption that they contracted with reference to and in conformity with that custom. The law on this subject is too elementary to justify any extended citation of authorities.

To be binding upon the parties to a contract, a custom must be uniform, long established, reasonable, generally acquiesced in, and so well known as to induce the belief that the parties contracted with reference to it, when nothing is said to the contrary. Sweet v. Leach, 6 Bradwell 212, and authorities cited by appellants' counsel.

2. In connection with the clear misdirection of the court in respect to the custom, the instruction singles out and calls the particular attention of the jury to the circumstances of the absence from the bill of the goods, of the words, " as are"; now when the rules of law established by the authorities cited by appellants' counsel, are applied to the evidence as to such supposed custom, such evidence falls entirely short of showing a valid and binding custom, so that, upon any fair, reasonable view of that evidence which the jury might take, the circumstance that the bill of the goods bore no such mark or words, was, in reality, of no significance whatever. Because to be of significance, there must have been a valid and binding custom to the effect supposed by the instruction. Notwithstanding the circumstance of the absence of the words " as are." from the bill, was, in reality, of no significance in determining whether the goods were sold as regular or irregular goods, yet the instruction singles out that circumstance, thus calling the particular attention of the jury to it. Would not that act lead the jury to suppose that particular importance was attached by the court, to the absence of those words? Giving such undue prominence to a particular fact or circumstance in evidence, is regarded by our Supreme Court as improper, and calculated to mislead the jury, even when such fact or circumstance is material and proper for the consideration of the jury. Homes v. Hale, 71 Ills. 552; Hewett v. Johnson, 72 Id. 513; Frame v. Badger, 79 Id. 441; Calef v. Johnson, 81 Id. 478; Martin v. Johnson, 89 Id. 537.

The point has been made and elaborately argued by appellants' counsel, that the verdict is not supported by the evidence, especially as respects the rescission of the contract of purchase by the plaintiffs. Inasmuch as the error in giving the instruction as above, necessitates a reversal, we do not

Converse v. Harzfeldt.

feel justified in discussing the point as to rescission, at any length.  We understand the rules of law to be, that if there were, in fact, a sale by sample, so that an implied undertaking arose on the part of the sellers, or there was what is called in the books an implied warranty that the bulk should correspond as to kind and quality with the sample, and it did not, the contract would be rescinded by the purchaser's offering, within reasonable time, to the sellers, to return to them the goods purchased.  "An offer to return the chattel in a reasonable time on breach of warranty, is equivalent in its effect upon the remedy, to an offer accepted by the seller, and the contract is rescinded, and the vendee can sue for the purchase money, in case it has been paid": Mathews v. Fuller, 8 Bradwell, 529.  In the case at bar the purchase, by the plaintiffs' own showing, embraced six cases of beavers; that is, the contract was entire for the six cases.  There is no pretense, and could be none, that it was necessary for the purchasers to use up any portion of these goods in order to determine whether the bulk corresponded with the sample.  It is, therefore, clear law, that to entitle the plaintiffs to recover back the purchase money as money had and received by the defendants, to their use, they were subject to the burden of showing what amounted to a rescission of the contract, and bringing suit as though it never had existed.  The only mode by which they attempted to show such rescission was by an offer to return a portion of the goods.  Some of the goods, the plaintiffs conceded, were regular—were such as they contracted for; that is, about half of them, while the other half were inferior.

The offer, by the purchasers, to return, is found in a letter they sent defendants, of date June 29, 1880.  In it they say: " To-day we opened the six cases of un. beavers we bought of you, and enclosed we hand you samples of the goods to show you the difference, how they run.  The best sample of the two we bought, and the other is far inferior, and we are sorry, gentlemen, to say that we can not use them and would like to return them.  They run about half good and half poor, and the inferior we want to return, and the better ones we will keep."

In another letter of date July 14, 1880, they declare that as to four of the cases, they hold the goods subject to the defendants' order. This was all the evidence on that point. The contract being entire as to the six cases, it seems clear to us that the offer of return, embracing only a portion, could not and did not operate to rescind the contract under which the purchase money was paid.

The offer, to be effective, should be unqualified as to the entire lot covered by the contract. The judgment of the court below will be reversed and the cause remanded.

Reversed and remanded.

WILSON, P. J.  I concur in reversing the judgment on the ground that the plaintiff failed to show a rescission of the contract by an offer to return the entire lot of goods covered by the contract.