Mulliner v. Bronson.

# EDWARD S. MULLINER

## v.

# CHARLES M. BRONSON.

1. CONSTRUCTION OF CONTRACT.—The court is of opinion that the true construction of the contract in this case is, that the lumber piled by appellee and accepted by appellant became the property of appellant, and he was to pay $10 per thousand feet upon all so accepted, but that the amount he was ultimately to pay was to be determined by the number of feet of clear lumber which could be measured out of the quantity so accepted when delivered dry at his yard in Quincy; that clear lumber was the subject-matter of the contract, and if inferior lumber was mixed in with it the latter goes as waste, and if appellee loses anything by it the fault was his own in sending it. As the instructions of the court below were based upon a different construction of the contract, they were erroneous.

2. CUSTOM.—The claim that appellee was entitled to a return of the rejected lumber or to be paid for it, upon the ground that such had been the accustomed mode of dealing between the parties in many prior transactions, can not be sustained, for such a private and special custom could not control the express words of the contract.

3. REASONABLENESS OF A CUSTOM.—An essential element in every custom is its reasonableness. *Quære*, whether the reasonableness of a custom is to be determined by the court or whether it is a question for the jury. The instruction given was, in either view of the case, erroneous.

APPEAL from the Circuit Court of Adams county; the Hon. J. H. WILLIAMS, Judge, presiding. Opinion filed January 22, 1884.

Mr. A. E. WHEAT, for appellant; as to when a new trial will be granted, cited Lawrence v. Atwood, 1 Bradwell, 217; C., R. I. & P. Ry. Co. v. Dingmon, 1 Bradwell, 162; Ragor v. Kendall, 70 Ill. 95; Pease v. Catlin, 1 Bradwell, 88; Orr v. Jason, 1 Bradwell, 439; Blanchard v. Pratt, 37 Ill. 243.

The construction of contracts is for the court, and can not be expounded by witnesses: Lintner v. Milliken, 47 Ill. 181; Streeter v. Streeter, 43 Ill. 155; McAvoy v. Long, 13 Ill. 147; Riley v. Dickens, 19 Ill. 29; Howe S. M. Co. v. Layman, 88 Ill. 42; I. C. R. R. Co. v. Cassell, 17 Ill. 389; Kamphouse v. Gaffner, 73 Ill. 453.

Mr. GEORGE M. JANES, for appellee; as to when a new trial will not be granted, cited Evans v. Fisher, 5 Gilm. 569; Palmer v. Weir, 52 Ill. 341; Varner v. Varner, 69 Ill. 445; Vanderslice v. Mumma, 1 Bradwell, 434; Hope Ins. Co. v. Lonergan, 48 Ill. 49; Millikin v. Taylor, 53 Ill. 509; Young v. Schorling, 60 Ill. 148; Lewis v. Lewis, 92 Ill. 237; Howitt v. Estelle, 92 Ill. 218; McNally v. O'Brien, 88 Ill. 237; C. & N. W. Ry. Co. v. Garfield, 11 Bradwell, 87; Taylor v. D. O. & O. R. R. Co., 10 Bradwell, 311; Ward v. Ward, 9 Bradwell, 403.

Where the words or terms used are doubtful or ambiguous they are construed most strongly against the person who gives or undertakes, or enters into an obligation: Richardson v. The People, 85 Ill. 495; Pike v. Munroe, 36 Me. 309; Mills v. Catlin, 22 Vt. 98; Jackson v. Blodgett, 16 Johns. 172; Charles River Bridge v. Warren Bridge, 11 Peters, 589; City of Alton v. Ill. Trans. Co., 12 Ill. 38.

A clear, certain and distinct contract is not liable to modification by proof of custom: Simmons v. Law, 4 Abb. 241; Cadwell v. Meek, 17 Ill. 220; Deshler v. Beers, 32 Ill. 368.

If a party contracting for work or material of a particular style, pattern and finish, accept anything different, he is bound for the contract price: Neville v. Frost, 2 E. D. Smith, 62; Ely v. O'Leary, 2 E. D. Smith, 355; Francois v. Ocks, 2 E. D. Smith, 417; Garrisonn v. Dingma, 56 Ill. 150; State v. Auditor, 61 Mo. 319.

McCulloch, P. J. This was a suit brought by appellee against appellant to recover a balance due on a lot of lumber furnished under a written contract, of which the following are the material provisions: Appellee was to set up his saw-mill in the sycamore timber growing on the land of one Crank, on or about the 1st of October, 1881, and should saw for appellant, as fast as possible, two hundred and twenty thousand feet of sycamore lumber, one inch thick, of which one hundred and twenty-five thousand feet should be sawed thirteen inches wide, seventy-five thousand feet to be fourteen and one half inches wide, ten thousand to be ten and eleven inches wide, and ten thousand to be eight and nine inches wide; the lumber to be sawed at certain specified rates every month, and the whole to be completed, if possible, before the 1st of January, 1882; said appellee to furnish appellant with lumber clear of shakes, knots and heart, and without doty or rotten places, and to pile said lumber as fast as sawed on high ground, with four sticks to every course of lumber, and all the lumber to become the property of appellant as fast as piled and accepted. Appellee was to deliver to appellant, at his yard in Quincy, the said lumber after it had remained piled on sticks for six months, and appellant was to pay him for the same at the rate of nineteen dollars per thousand for the two hundred thousand feet of thirteen and fourteen and one half inches wide lumber, and at the rate of fifteen dollars per thousand for the balance; appellant to measure said lumber after it should be delivered dry to his yard in Quincy, and to measure such only as should be absolutely clear and would work into tobacco boxes. Ten dollars per thousand feet were to be paid appellee monthly as fast as good lumber should be sawed and well piled on sticks, and the remainder of the

Mulliner v. Bronson.

money to be paid to appellee monthly as fast as the dry lumber should be delivered in Quincy, six months thereafter, and measured up clear according to the terms of the contract.

Subsequently, certain provisions of the contract were waived by the parties, and by a verbal agreement it was enlarged so as to cover a larger quantity of lumber, but the prices were to be the same.

Appellee claims that he delivered to appellant two hundred and sixty-three thousand eight hundred and thirty-nine feet of lumber, and that this amount included three thousand nine hundred and forty feet of maple lumber, about which there is no dispute, leaving, in round numbers, two hundred and sixty thousand feet of sycamore lumber delivered on the contract.

On the other hand, appellant claims that when the lumber arrived at Quincy it measured up clear, according to the contract, forty thousand feet of the narrow kinds, and one hundred and sixty-one thousand five hundred and twenty-nine feet of the wide, which, at the contract price, amounted to $3,669.05, and upon which he had overpaid appellee the sum of $120.16. Appellee claims there is due him $1,088.96, but the jury rendered a verdict in his favor of only $570.80.

The contention between the parties relates mainly to the construction to be given to the contract under which the lumber was delivered. Appellant contends that appellee had contracted to deliver to him, piled at the saw mill, such lumber as would, when seasoned, be clear of shakes, knots and heart, and without doty or rotten places; that upon his acceptance of the same all the lumber so piled should become his property, but that the amount he was to pay for the same should be determined by the final measurement at Quincy after it had undergone six months' seasoning at the mill; that in this measurement he was to take into account only such as should be absolutely clear and would work into tobacco boxes, and that all that should not come up to that standard should be considered as waste, and not taken into the account in making up what was to be paid for.

On the trial in the circuit court, appellee's counsel took the ground that, unless there was a custom proved which should

control the language of the contract, if any portion of the lumber delivered by appellee to appellant under the contract was not measured or paid for by appellant, because he did not consider it to be of the kind or quality specified in the contract, and he appropriated the same to his own use, then he should pay for it what it was reasonably worth.

In this court they assume a somewhat different position and argue that the verdict of the jury may be supported upon the ground that even if all the lumber piled at the mill became the property of appellant, then he was to pay for the same at least ten dollars per thousand for all that he accepted, and for such as should measure out absolutely clear when delivered at Quincy, he was to pay the additional $9 and $5 per thousand feet to bring the same up to the contract prices. According to this interpretation of the contract appellant would have to pay $10 per thousand for all the refuse and worthless lumber there might be found in the pile, after undergoing the seasoning process, in order to get the good lumber at the prices mentioned in the contract. We can not so construe the contract. What appellant contracted for was clear lumber to be used for a specific purpose, and its fitness was to be determined when the lumber in the pile should be delivered at his yard in Quincy, after undergoing a process of seasoning. From the language of the contract itself it is to be inferred that both parties understood that some lumber might be sent to appellant which would not come up to the requirements of the contract, and such was not to be measured nor was it to be reckoned in making up the sum which appellant was to pay. No lumber was purchased to be paid for at $10 per thousand, nor does the contract provide that such as should be rejected should either be returned to appellee or paid for at what it should prove to be reasonably worth.

The contract does not provide that appellant should pay $10 per thousand feet upon the lumber that appellee should send to appellant's yards at Quincy, but that $10 per thousand should be paid monthly as fast as good lumber should be sawed and piled. It further provides that all the lumber should become the property of appellant as fast as piled and

accepted. While this acceptance by appellant operated to vest the title in him as to all the lumber in the pile, and entitled appellee to his $10 per thousand feet for the same, yet the amount that appellant was ultimately to pay for the same was left to be determined by the amount of clear lumber it should yield when delivered dry at his yard in Quincy.

If all the lumber in the pile was sold at a minimum price of $10 per thousand feet, with the prospect of appellee's realizing $15 and $19 per thousand upon the greater portion of it, then he was guilty of the folly of selling out about ten per cent. of the very worst of the lumber before shipment, when by sending it to appellant's yard in Quincy he could have demanded $10 per thousand for all of it. But if on the other hand such of the lumber as did not meet the requirements of the contract was to be regarded as waste and of no value to either party, then appellee could save the cost of transportation by culling it out before shipment, and at the same time appellant would suffer no damage. In this respect, therefore, appellee by his own acts seems to have put a construction upon the contract which fully accords with our understanding of its language.

What we understand by the contract is that when piled by appellee and accepted by appellant all the lumber became his, and he was to pay $10 per thousand upon all so accepted, but that the amount he was ultimately to pay was to be determined by the number of feet of clear lumber which could be measured out of the quantity so accepted when delivered dry at his yard in Quincy; that in accepting the lumber so piled at the mill appellant assumed the risk of getting enough clear lumber out of the whole to repay him the ten dollars per thousand feet paid upon the quantity so accepted, but if the clear lumber measured at the yard amounted, at the respective prices of $15 and $19 per thousand feet, to no more than he had paid upon the whole at $10 per thousand, then appellee was to receive no mor pay.

The transaction is analogous to that of a sale of corn in the ear, whereby the purchaser pays in advance of delivery a cer-

tain sum per bushel for the estimated number of bushels in a crib, the whole to be delivered to him at his warehouse at a future day to be there shelled, and to be paid for at a certain price per bushel for all the shelled corn it will yield. In such case the subject-matter of the contract is the corn. The cob is waste, and while it goes to the purchaser it is not reckoned of any value. It is rather an incumbrance. The purchaser pays no more than the contract price for the shelled corn, unless he has been imprudent enough to make too large an advance upon it before delivery.

In this case the clear lumber is the subject-matter of the contract and, if inferior lumber is mixed in with it, the latter goes as waste, and if appellee loses anything by it, the fault was his own in sending it.

Counsel for appellee seek to justify the claim that he was entitled to a return of this rejected lumber or to be paid for it, upon the ground that such had been the accustomed mode of dealing between the parties in many prior transactions. The answer to this is that a private and special custom of that character can not control the express words of the contract. Dixon v. Dunham, 14 Ill. 324. If such a custom had existed between the parties prior to this contract the court would look upon the contract as putting an end to it, or at least, as taking this particular transaction out of the operation of the custom.

Where, however, a contract is of doubtful meaning, a general and established custom may sometimes be resorted to for the purpose of ascertaining its true meaning. In this case, appellant introduced evidence tending to show a general custom existing among all dealers in this particular kind of lumber respecting the manner of measuring it. This custom, as stated by appellant, "is to reject that portion that was shaky, or had heart or rotten parts and knots, and to consider them as entirely useless and worthless, and they would not enter into the calculation in any way. Such custom between buyers and sellers is to consider that board as being of no value; the general and universal custom is to measure that portion of the board that filled the contract; the portion that re-

Mulliner v. Bronson.

mained, the sound portion of the board, was taken, and no account taken of the unsound." Again he says, "the custom is to measure out the heart; if the heart runs in the middle of the board, we measure the good on each side and leave the heart in calculating; if a board is one third shaky and two thirds sound, we measure two thirds of the width of the board and multiply it by the entire length; that gives the quantity of sound lumber in the board. The custom relative to sycamore is different from that relating to hard wood lumber, because sycamore lumber when it is unsound is absolutely worthless and can not be used for anything." This is a fair statement of the custom claimed to exist and the reason for it. Witnesses were called on the respective sides to prove and disprove its existence. We do not deem it necessary to go further than to state the claim as made by appellant. In the view we have taken of the case, it was unnecessary to prove such a custom in order to arrive at the meaning of the contract, for, from the language of the contract itself, it is capable of receiving a definite interpretation, to which the existence of the custom adds no new light. In our opinion the contract agrees with the custom.

The learned judge before whom the case was tried in the circuit court, took an entirely different view of the meaning of the contract from that entertained by this court; namely, that appellant must pay for all lumber received and used by him that complied with the contract at the contract prices, and the rejected lumber at what it was reasonably worth, unless a custom was proved that the purchaser might appropriate to his own use without compensation all lumber delivered to him by the seller, which was not up to the standard of the contract. In accordance with these views the court gave to the jury the following instruction:

"The court further instructs the jury that, even if they believe from the evidence in this case, that it was a part of the contract between the plaintiff and the defendant that the defendant was to measure the lumber cut and furnished under such contract by the plaintiff to the defendant, yet the law requires that such measurement should be just and fair to the

plaintiff as well as to the defendant. And if the jury further believe from the evidence that any portion of the lumber so delivered by the plaintiff to the defendant under the contract read in evidence was not measured or paid for by the defendant, because the defendant did not consider such lumber of the kind or quality specified in such contract, but that, notwithstanding such omission to measure the same, the defendant actually appropriated to his own use such lumber not measured, then the plaintiff can recover what such unmeasured lumber was worth, if anything, when so appropriated by him, the said defendant, unless the jury further believe from the evidence, that at the time the contract or contracts between the plaintiff and defendant were entered into, a general and well-known custom prevailed at the place where said contract was made, amongst all persons dealing in said lumber, that the purchaser might appropriate all lumber delivered to him by the seller to his own use without compensation, which was not up to the standard of the contract, and if such custom did exist, it was so in derogation of general principles and reason that its existence must be clearly shown by the evidence."

The first objection to this instruction is, that it puts such a construction upon the contract that, if appellant appropriated to his own use the rejected lumber, he must pay for it what it was reasonably worth—in other words that the rejected lumber belonged to appellee, whereas the contract says that all the lumber piled by appellee for appellant and accepted by him should be the property of appellant.

A second objection taken to this instruction is, that there is no evidence in the record that the rejected lumber had any value, and therefore upon this point there is no evidence for this instruction to rest upon. This objection we consider to be well taken. In the absence of any testimony upon this point the jury may, as is argued by counsel for appellee, have considered the rejected lumber as worth ten dollars per thousand feet, and may have based their verdict on that calculation.

A still further objection may be noted to this instruction

which occurs in the last clause of it. An essential element in every custom is its reasonableness. If it is unreasonable it is void. There does not seem to be entire harmony in the decisions of other States as to whether the reasonableness of a custom is to be determined by the court or whether it is a question for the jury. We are not aware that the question has ever been definitely decided in this State. In either view, the instruction in question is erroneous. If, as a matter of law, the court considered the alleged custom an unreasonable one, it should have been held void and the jury should have been so instructed; but if it was a question for the jury, then it was error in the court to tell them that it was in derogation of general principles and of reason, for that was the very question the jury had to pass upon. It matters not how clearly a custom may be proved, if it is unreasonable it is void and the courts must disregard it. But in this connection it may be remarked that, in regard to usages of trade, men engaged in any particular line of business are generally as capable of exercising an intelligent judgment as to what is reasonable in the manner of transacting their business among themselves, as are courts and juries; and if a well established usage is found to exist among them, it ought not to be rejected as unreasonable without full inquiry into the reasons upon which it rests.

For the reasons herein given, the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.