## *In re* ARMSTRONG.

### (*Circuit Court, S. D. Ohio, W. D.* January 18, 1890.)

1. BANKS AND BANKING—DRAFTS—ACCEPTANCE.
   A telegram promising to pay a certain draft constitutes an acceptance of the draft.

2. SAME—NATIONAL BANKS—INSOLVENCY—PREFERENCES.
   Rev. St. U. S. § 5242, which invalidates all transfers of the notes, bonds, or bills of exchange of a national bank, after the commission of an act of insolvency, with a view to the preference of one creditor over another, does not prohibit a bank which has in good faith accepted the draft of a national bank the day before the latter's insolvency, and afterwards paid the same, from applying the proceeds of collections made by it, on paper in its hands belonging to the insolvent bank, to the payment of the draft, since its lien on such collections runs from the date of the acceptance.

Petition of David Armstrong, as receiver of the Fidelity National Bank, for leave to settle controversies with the Seventh National Bank of Phil-

adelphia. Rev. St. U. S. § 5242, provides that "all transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit, * * * made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void."

*John W. Herron*, for petitioner.

SAGE, J. The petition sets forth that on the 18th day of June, 1887, the Fidelity National Bank issued to Eugene Zimmermann a sight-draft for $15,000 on the Seventh National Bank of Philadelphia. On the 20th day of June, Zimmermann offered this draft to the Merchants' National Bank of Cincinnati for deposit as cash. Before receiving it the Merchants' National Bank telegraphed to the Seventh National Bank as follows:

"CINCINNATI, June 20, 1887.

*"To the Seventh National Bank of Philadelphia, Pa.:* Will you pay draft of Fidelity National Bank on you for $15,000? Answer quick.

"W. W. BROWN, Cashier Merchants' National Bank."

The Seventh National Bank answered as follows:

"PHILADELPHIA, June 20, 1887.

*"Merchants' National Bank, Cincinnati, Ohio:* Will pay Fidelity National Bank draft for $15,000, at sight.          L. D. BROWN, President."

Upon receipt of this dispatch, the Merchants' National Bank took said draft as cash, permitting Zimmermann to check against it, and forwarded it to Philadelphia for payment. The Seventh National Bank paid the draft, June 22, 1887, after it had notice of the failure of the Fidelity National Bank, which occurred on the 21st of June, 1887. It is claimed by the receiver that he is entitled to the balance to the credit of the Fidelity National Bank on the books of the Seventh National Bank at the date of the failure of the Fidelity National Bank, in preference to the claim of the Seventh National Bank upon said $15,000 draft. After charging said draft to the Fidelity National Bank on the books of the Seventh National Bank, the former was indebted to the latter in the sum of $7,384.25. Since that time the Seventh National Bank has collected, on paper in its hands at the time of the failure of the Fidelity National Bank, $7,257.28, and claims to hold the same on account of the balance due as above. The receiver submits to the court the question of the validity of his claim to the proceeds of said collections, as against the claim of the Seventh National Bank of the right to apply said proceeds to the liquidation of its claim for the payment of said draft.

The telegram from the Seventh National Bank to the Merchants' National Bank, in answer to the telegram from the Merchants' National Bank, was a valid acceptance of the draft. No particular form is essential to an acceptance. It may be expressed in words, or implied from

the conduct of the drawee, and it may be verbal or written. It may be before the bill is drawn, or afterwards, and it may be by telegram. Daniel, Neg. Inst. § 496; *Bank* v. *Richards*, 109 Mass. 414; *Coffman* v. *Campbell*, 87 Ill. 98. It is true that acceptance does not entitle the acceptor to charge the amount of the draft against the drawer from the date of the acceptance, unless he pays the whole amount at the time, or discharges the drawer from all responsibility. Daniel, Neg. Inst. § 532. But it has the effect to constitute the acceptor the principal debtor, and it gives him a lien upon the funds and securities in his hands for the payment of the draft, and this lien runs from the date of the acceptance. In *Bank* v. *Schuler*, 120 U. S. 511, 7 Sup. Ct. Rep. 644, the doctrine that a check, unless accepted by the bank, will not sustain an action at law by the drawee against the bank, inasmuch as there is no privity of contract between them, is recognized as well settled; and the court held that a check does not become a valid claim upon funds against which it is drawn until the holder of those funds is notified of its existence. The acceptance of the draft in question was made in good faith, and in the ordinary course of business, on the day preceding the closing of the Fidelity Bank. There is nothing indicating that the action of the Merchants' National Bank was in contemplation of the insolvency of the Fidelity, or with the view to prevent the application of the assets of that bank in the manner prescribed by the national banking laws, nor is there anything indicating that the Merchants' National Bank or the Seventh National Bank had any knowledge or intimation of the impending failure of the Fidelity Bank. Upon this state of fact this court is of the opinion that the transaction was not within the inhibition of section 5242, Rev. St. U. S., and that the Seventh National Bank had the right to apply the proceeds of the collections upon the paper in its hands of the Fidelity Bank, at the date of the acceptance, to the payment of the draft. An order will be made accordingly.