# POSEY v. THE DENVER NATIONAL BANK OF DENVER, COLORADO.

1. DRAFTS, CONDITIONAL AUTHORITY TO DRAW.
When the right to draw is conditioned upon the performance of some act or the existence of certain facts, a draft is unauthorized unless it appears that the act has been performed or that the facts exist. Such conditions, however, must be clearly expressed.

2. SAME.
The letter of credit, or authority to make a draft, should define the

conditions upon which the act is authorized so clearly that the purchaser may not only know what they are, but may be able for himself, before purchasing, to verify their existence. Where the conditions are definitely stated and their existence or nonexistence capable of ascertainment, he must see that the facts justify the purchase, or he buys at his peril.

3. Same.

Authority to draw was expressed thus: "If you are still there and need the money yet, you can make draft on me for $500, and I will pay it." *Held*, the conditions were so indefinitely expressed that, under the circumstances of this case, an advancement of money upon the draft was warranted and the drawee liable.

4. Practice—Pleading.

Denials of the legal effect of a paper set up in the complaint are unauthorized and may be stricken out on motion.

*Appeal from the County Court of Arapahoe County.*

Mr. Charles H. Toll, Mr. Chas. M. Garwood and Mr. William R. Barbour, for appellant.

Mr. Stuart D. Walling, for appellee.

Thomson, J., delivered the opinion of the court.

Appeal from a judgment of the county court of Arapahoe county, in favor of the Denver National Bank, and against Oliver P. Posey, in an action brought by the bank to recover the amount of a certain draft, drawn by L. A. Dunham upon Posey, alleged to have been accepted by Posey, and cashed by the bank.

On the 17th day of November, 1892, Dunham was in possession of the following letter written to him by Posey:

"Whitewater, Wis., Oct. 31, 1892.

"Dear Dunham:

"On my return from the lake, to-day, where I have been shooting, I found your letter of the 27th. You have, no doubt, gone before this time; hence, I write you instead of wiring, as requested.

"Of course, I could raise a small amount of money on short

notice, but am using my banks for all they will stand, but if you are still there and need the money yet, you can make draft on me for $500, and I will pay it.  I am very sorry, indeed, that you have been placed in such an embarrassing position, and ordinarily I could help you out, but to-day am really hard up myself.  I am now struggling to raise $50,000 for the smelter, that has come on me unexpectedly.

"Yours truly,

"O. P. POSEY."

On that day (November 17th) Dunham exhibited this letter to John C. Mitchell, the cashier of the plaintiff, and requested the plaintiff to advance him the money upon a draft to be made by him upon Posey, in pursuance of the letter, and upon its authority.  Mitchell, as cashier, assented, and a draft for $500 was accordingly made, payable to the plaintiff, which thereupon took the draft and paid the amount to Dunham.  The plaintiff then forwarded the draft to Whitewater, Wisconsin, for collection.  Posey refused to honor it, and it was returned unpaid and protested.  The answer of the defendant set forth two defenses.  A portion of the first was stricken out on motion, and a demurrer was sustained to the second.  The following is what was stricken out of the first defense:

"The defendant Oliver P. Posey, answering the complaint herein, admits that on the 31st day of October, 1892, he wrote the letter of which a copy is set up in the amendment to said complaint, but denies that he thereby or otherwise authorized the said defendant Dunham to draw or make draft upon him for $500 or any other sum, and denies that he promised or agreed to pay any draft upon him by said Dunham for $500, or any other sum except as hereinafter stated, and under the conditions hereinafter set forth.  He denies that he accepted the draft mentioned in the complaint, or any draft.  Denies that he agreed to accept any draft except as hereinafter set forth and subject to the conditions hereinafter mentioned.

" This defendant further denies that the draft mentioned in the complaint was made, executed or delivered in pursuance of said letter of this defendant, of which a copy is set up in the complaint or in pursuance of any authority, direction, acceptance or agreement to accept such draft or any drafts, but avers, on the contrary, that such draft was drawn in direct contravention and disregard of the conditions imposed by said letter of this defendant, of which a copy is set up in the amendment to said complaint."

The second defense is as follows:

" And, further answering said complaint as amended, this defendant avers that on or about the 27th day of October, 1892, the defendant Dunham was in the city of Chicago, in the state of Illinois, and that on or about said day said defendant Dunham, by his letter of that date, dated at said city of Chicago and directed to this defendant, represented to this defendant that he was in great need of money for certain purposes specified in his said letter, and, among others, for the purpose of enabling him to pay certain indebtedness incurred by him in said city of Chicago, for board and lodging and other purposes, and that without the payment of such indebtedness he would be unable to depart from said city of Chicago, and go to the city of Denver, Colo.; that it was important to him that he should at that time be enabled to go from said city of Chicago to the city of Denver, and that if he were enabled to go to said city of Denver he would not need money from this defendant, but would be able to obtain in the city of Denver such sums as he might require to use at said city of Denver, and in said letter said Dunham requested this defendant to authorize a draft to be drawn by said Dunham upon this defendant for money to be used for said purposes. And this defendant further shows that upon the said representations of said Dunham and induced thereby, and after receiving said Dunham's said letter dated as aforesaid, at said city of Chicago, on the 27th day of October, 1892, he wrote to said Dunham the letter set up in the amend-

ment to the complaint herein, and sent the same to the said Dunham at the said city of Chicago.

" This defendant further avers that he never agreed or intended to agree to accept or pay any draft of said Dunham except a draft drawn from Chicago for the purpose of enabling said Dunham to procure funds to enable him to leave said city of Chicago and go to the city of Denver aforesaid, and that there never was any consideration for any acceptance by this defendant or for any agreement by this defendant to accept or pay any other draft than one drawn from said city of Chicago, for said last named purposes, and that at the time said letters were written and said draft drawn, and at the time of its presentation this defendant had no funds of said Dunham in his hands.

" And this defendant further avers that said draft mentioned in the complaint was drawn by the defendant Dunham, at the city of Denver, and that at the time it was so drawn said Dunham had, recently and since, to wit, the 7th day of November, 1892, arrived in the city of Denver from said city of Chicago, and that at the time of the drawing of said draft the plaintiff had full notice and knowledge of the fact that said Dunham had, subsequent to the time when this defendant's said letter was written, and subsequent to about the 7th day of November, 1892, arrived in the city of Denver from the city of Chicago aforesaid. And this defendant further avers that said plaintiff never made any inquiry of or investigation through either said Dunham or this defendant as to the nature, extent, conditions, duration or continuing existence of said Dunham's authority to draw upon this defendant.

" And this defendant further shows that at the time said draft was drawn, as set forth in the complaint, all authority of said Dunham to draw upon this defendant had expired, and that said draft was drawn long after the expiration of a reasonable and proper time after any authority to draw any draft upon this defendant had been given to said Dunham.

" Wherefore, this defendant prays that the complaint be dismissed as to him, with costs."

The cause then went to trial, and, upon the evidence, the plaintiff had judgment.   A number of errors are alleged, but the only ones which are important relate to the rulings of the court upon the motion and demurrer, and its refusal to give instructions requested by the defendant.

The principal question in the case arises upon the letter from the defendant to Dunham.   It contains a promise to pay Dunham's draft for $500 ; but the promise is coupled with conditions, and it is in these conditions that the main difficulty is found.   The industry of counsel has brought to our notice a large number of decisions upon the questions regarded as controlling in the case ; but the principle which they elaborate is well understood, and it will be unnecessary to subject them to analysis.   It is stated generally that where the right to draw is conditioned upon the performance of some act, or the existence of certain facts, it must appear that the act has been performed or that the facts exist. Daniel on Negotiable Instruments, sec. 551 ; *Bank v. Recknagel*, 109 N. Y. 482.   But if a party desires to limit his acceptance by conditions, they must be fully and intelligibly expressed.   *United States v. Bank of the Metropolis*, 15 Pet. 377 ; *Coffman v. Campbell*, 87 Ill. 98.

The letter of credit, or authority to make the draft, should define the conditions upon which the act is authorized so clearly that the purchaser may not only understand what they are, but may be able for himself, before purchasing, to verify their existence ; but where the conditions are definitely stated, and their existence or nonexistence capable of ascertainment, he must see that the facts justify the purchase, or he buys at his peril.

The authority to draw, in this case, was certainly conditional.   The language is : "If you are still there and need the money yet, you can make draft on me," etc.   It was plainly the intention that if Dunham should not be " there," or should not need the money " yet," no draft should be made ;

and if at the time Dunham drew upon Posey the conditions did not exist, as between the drawer and the drawee the draft was worthless; but this would not enable the defendant to escape liability to the bank, if it was, nevertheless, upon the face of the paper, and the apparent facts, warranted in paying the money to Dunham. Whether it was or not depends in a considerable degree upon the nature of the conditions themselves, and the form in which they were expressed. These conditions have this peculiarity, that the facts upon which their existence or nonexistence might be determined were not discoverable by ordinary methods. Whether Dunham in fact needed the money or not was something which the bank could not very well know, and which it had not very ready means of ascertaining. A man who requires money to escape starvation "needs" it, and a man who requires it in the conduct of his business also "needs" it; and whether he needs it or not is a question which cannot be satisfactorily determined for him by another. The bank necessarily had to rely on Dunham's representation upon the subject, and the exhibition of the letter, and making of the draft for the amount expressed, was, we think, a sufficient representation. It was also a condition of the authority that Dunham should be "there." Used alone, "there" is a word of very uncertain meaning. It must in some way be confined as to locality before it conveys any definite idea. In this instance it was hardly susceptible of definition, except by association with the place where the authority was exhibited. Upon the production of the letter at the plaintiff's bank in Denver, unless it had some knowledge upon the subject other than that imparted by the letter, it had the right to assume that Denver was the place intended by the word,— that the letter was directed to Denver, and received in Denver. Dunham probably knew what the letter meant, and therefore knew whether, when he made this draft, he was acting within the authority given; but there was nothing upon the face of the letter to apprise the bank that Dunham could not rightfully do as he did. The facts below the

surface might exonerate Posey from liability, if the question were between him and Dunham; but the bank had nothing to rely on but appearances.  Posey was responsible for the appearances.  *Prima facie*, they justified the bank in advancing the money, and Dunham's private knowledge that his authority was at an end is without avail as against it.

There is another principle, however, upon which this controversy may be decided, and which was not involved in any of the cases to which we have been referred.  The whole tenor of the letter, the very character of the conditions themselves, and the implication naturally, if not necessarily, arising from the language employed, would, we think, be ample justification to any one who, without other knowledge of the facts, might advance his money upon the draft, in reliance upon the defendant's promise to refund it; and this proposition we shall now proceed to consider.

We quite agree with counsel that it is apparent from the letter that the permission to draw was intended merely as a favor to Dunham, and grew out of the willingness of the defendant to aid him, without being under any legal obligation to do so.  We find in this letter a desire on the part of the defendant to assist Dunham, even at a greater or less sacrifice of his own convenience, and a confidence in Dunham that the authority given would not be abused.  He authorized Dunham to draw upon certain expressed conditions, but from their character and language it is evident that he trusted to Dunham himself to keep within their limits.  By that letter he virtually said to any person to whom it might be presented that Dunham was, in his estimation, a man of honor, who would not make use of the authority given, except in accordance with its terms.  By trusting Dunham himself, he invited others to trust him; and if the confidence in the man which he exhibited begot a like confidence in the bank, thus inducing it to advance the money for which Dunham was authorized to draw, upon what principle can it be said that the bank and not the defendant shall be the loser?  The plaintiff was warranted in

relying upon the implied assurance of the trustworthiness of Dunham, and therefore cannot be charged with want of diligence in not inquiring further. There is nothing on the face of the letter to indicate that his authority had expired when he obtained the money. We cannot see that the interval between the time of the probable receipt of the letter and November 17th was calculated to excite suspicion. It was not necessarily sufficient in extent to exhaust the meaning of the indefinite word "yet." Indeed, if it attracted attention at all, it could readily and very naturally be accounted for, in perfect harmony with the sentiment pervading the letter, by a conscientious desire on Dunham's part to postpone the making of the draft until necessity compelled it. The defendant gave the plaintiff the right to believe that Dunham would not act at the wrong place or the wrong time. If Dunham did in fact abuse his authority, and practice an imposition, it was the defendant who made the imposition possible, and, as between him and the plaintiff, he should bear the loss.

The portion of the first defense which was stricken out consisted of denials of the legal effect of the letter. They were not denials of allegations of fact, but tendered issues of law. They involved no question which could be submitted to a jury, and, in the form of an answer, were not authorized by the code. The motion to strike was properly made and sustained. The second defense set forth the facts and circumstances under which the letter was written, the representations which induced the plaintiff to authorize Dunham to draw upon him, and, generally, the understanding between the two, in pursuance of which, and not otherwise, the draft should be made; but it nowhere averred that the plaintiff had any knowledge of any alleged fact, circumstances or understanding, connected with the authority. The nearest approach to such an allegation is the statement that the plaintiff had full notice and knowledge of the fact that Dunham, subsequent to the time when the defendant's letter was written, and subsequent to about the 7th day of November, arrived

in the city of Denver from the city of Chicago; but this falls considerably short of charging knowledge or notice upon the plaintiff of any fact nullifying the authority in Dunham's possession. It is entirely consistent with the supposition that Dunham wrote his letter to the defendant from Denver before going to Chicago, and received the defendant's answer in Denver after his return. Even if the knowledge alleged might be sufficient, under other circumstances, to suggest inquiry, yet the tone of the defendant's letter, the close personal relations between him and Dunham which it indicated, and his confidence in Dunham, which is unmistakably apparent, would have the natural effect of suppressing mistrust, so that the thought of inquiring would not occur. In our judgment the court correctly held this defense insufficient.

The instructions given to the jury were in harmony with the views which we have expressed, and must therefore be approved. The instructions requested by the defendant, except in so far as they were covered by those given, were framed upon his theory of the law applicable to the case, and were based upon legal propositions which we believe to be untenable.

The record appears to be free from error, and the judgment must be affirmed.

*Affirmed.*