## Hans A. Calland and John F. Pethybridge v. Louis A. Trapet.

1. CUSTOM AND USAGE—*Proper Office of—Must be Generally Known.*—The proper office of a custom or usage in business is to ascertain and explain the intent of the parties, and it can not be inconsistent with the terms of the agreement between them, or against the established principles of law. It must be generally known, and so uniformly acted upon as to raise a fair presumption that it was known to both contracting parties, and that they contracted in reference to it.

2. SAME—*Requisites of.*—Where usage is relied upon to establish a right it must be shown to be ancient, certain, uniform, reasonable, and so general as to furnish a presumption of knowledge by both parties.

Assumpsit, for commissions. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard

in this court at the March term, 1897. Affirmed if remittitur be entered, otherwise reversed and remanded. Opinion filed May 24, 1897.

Jones & Strong, and Frank Crosby, attorneys for appellants.

St. John & Merriam, attorneys for appellee.

Mr. Justice Waterman delivered the opinion of the Court.

This was an action of assumpsit, to recover from appellants real estate commissions claimed to be due from them on account of an exchange, said to have been effected by appellee, of certain real property in Evanston for real and personal property in Clinton, Iowa.

There is no dispute that the exchange was effected. That appellee was employed to make the same is denied.

It appears that appellants, when proposing to trade their property for other real property, put their property in for consideration at a valuation of $75,000. That they at first declined to accept the Clinton property because there was a mortgage of $10,000 upon it, and afterward concluded to exchange, first putting an incumbrance of $10,000 upon their Evanston property, so that the mortgages upon the respective properties might be equal.

The Clinton, Iowa, property had also, in being placed upon the market for exchange, been put in at a valuation of $75,000.

It is evident that neither of the trading parties thought their respective properties to be worth anything like the amount that, for trading purposes, they had placed its value at; so that when deeds came to be drawn, the consideration in the conveyances made of the Evanston property was placed at $30,000, while the consideration for the Clinton, Iowa, property was placed at $37,500, because that property included not only real estate but certain personal property consisting of horses, furniture, etc.; and thus while, by the considerations recited in the deeds, one prop-

erty appears to have been sold for $7,500 more than the other, the exchange was even.

It appears that neither property was actually worth over $15,000; that one of the owners of the Evanston property had, prior to the trade, offered to sell his one-half interest for $7,000. That a deed for appellants to execute was first made out with the consideration of $75,000 written in it, and that they refused to execute such deed.

Appellee claimed that he was entitled to a commission of two and one-half per cent upon $75,000, being the sum of $1,875, with interest thereon at five per cent per annum.

It was not claimed that there had been any agreement as to what commission should be paid; while appellants insisted that appellee was acting for the owners of the Clinton, Iowa, property, and that they distinctly told appellee that they would not pay any commission.

As to the commissions to which appellee claimed he was entitled, appellee testified as follows:

" Have been in the real estate business in Chicago since 1887, and know the general custom and usage among owners and brokers in Chicago as to brokers' commissions. According to the Real Estate Board rules, under which we work, commissions for anything under $3,000 in Cook county is five per cent for clear property, and above that to $10,000 is two and one-half per cent; outside of Cook county five per cent. This would fall under the two and one-half per cent class. These were the rules governing transactions at that time. I base this two and one-half per cent commission on the original proposition on which the deal was made—$75,000. It is ordinarily based on the prop-osition that is made and accepted; it makes no difference about the value of the property. It may be based on $100,000 and closed on the basis of $10,000; that would not determine the value. I charge on the value the owner puts on. The owner fixes what he thinks his property worth; he makes a proposition and we base on that. It depends very little on the value. A good deal depends on supply and demand."

Another witness for plaintiff testified : " Was familiar with the customs pertaining to exchanges of real estate here in the city in 1894. Commissions on sales of property of this description in Cook county were by that custom two and one-half per cent on the price. By price I mean the price the property is sold at. This price has nothing at all to do with the value of the property. The price is given to you by the owner of the property in utter disregard of its value."

A witness for defendants testified that the custom of real estate agents in Chicago, as to charging commissions, is not to charge on the consideration mentioned in the deed, but on the value of the property.

There is no evidence in the case upon which to base a rate for commissions save testimony as to usage in Chicago at the time the exchange under consideration was made.

The Supreme Court in Bissell v. Ryan, 23 Ill. 517, said : " The proper office of a custom or usage in business is to ascertain and explain the intent of the parties; and it can not be in opposition to any principle of general policy, nor inconsistent with the terms of the agreement between the parties, or against the established principles of law. Besides all, it must be generally known and established, and so well settled and so uniformly acted upon as to raise a fair presumption that it was known to both contracting parties, and that they contracted in reference to it, and in conformity with it. * * * All the authorities concur in saying that, if usage is relied upon, it must be shown to be ancient, certain, uniform, reasonable, and so general as to furnish this presumption of knowledge by both parties." See also Turner v. Dawson & Howe, 50 Ill. 85.

This language of the court is repeated and affirmed in Wilson v. Bauman et al., 80 Ill. 493, and in Sweet v. Leach, 6 Ill. App. 212. The same doctrine is announced in Converse v. Harzfeldt, 11 Ill. App. 173; Mulliner v. Bronson, 14 Ill. App. 355; Leggat et al. v. Sands Brewing Co., 60 Ill. 158, and in Coffman v. Campbell & Co., 87 Ill. 98.

The Supreme Court in Bissell v. Ryan, also say that " a

usage can not be established by proof of one instance, but by an accumulation of instances; that it can not be established by evidence of opinion merely." Cunningham v. Fonblanque, 6 C. & P. 44.

In 27 Am. & Eng. Ency. of Law, 736, 737, the doctrine as to usages is declared to be as follows:

" Usages being a fact, and to be proved as a fact, it follows that the existence of a usage can not be established by the mere opinions of witnesses as to what is, as applied to the law, the case in hand. It often appears that what is supposed to be a usage of trade, is merely the general opinion of persons as to their rights and liabilities under certain facts; such opinion can not constitute a usage. Merchants may consider themselves as having certain rights in certain cases, and may think of the matter as being a usage of their trade; but a usage is a mode of conducting business, a course of dealing, and can not from its nature be the subject of opinion. It must be a method of dealing with certain facts, and not a conclusion as to the rules of law pertaining to those facts."

It is apparent that the testimony as to usage did not come within the rule of law in respect thereto. Appellee, who did not claim to be a member of the Real Estate Board, testified as to its rules, under which, he said, " we work."

This is very far from being a statement of a generally known, established, and so well settled custom that therefrom the presumption is raised that both parties contracted with reference to it.

None of the witnesses testified to any established, well settled, certain and general custom about charging commissions upon the basis of the price put upon the property by the owner, without respect to what might be obtained for it, although appellee testified that he charged on the value that the owner puts on his property, and appellee's witness, R. B. Stone, testified that commissions were charged upon the price the property is sold at, which he declared had nothing to do with the value of the property.

In the present case it does not appear that the Evanston

property was in reality sold at any particular price; it was exchanged for another piece of property; so that if we are to ascertain and express in dollars the price for which the Evanston property was sold, we have to ascertain the value in dollars of the Clinton property, which does not appear to have been worth more than $15,000.

The jury returned a verdict for $937.50, which is 2½ per cent upon $37,500, the sum named in the deed of the Clinton property as the consideration.

There was no evidence either of a general, well understood and certain custom in the sale of real estate to charge commission on the consideration named in the deed, or on the price which the owner may have fixed upon his property, without reference to the value actually obtained therefor. Whatever custom exists in this regard should have been proven, in accordance with the rule as laid down by the Supreme Court of this State.

For the want of such evidence, the judgment of the Circuit Court will be reversed and the cause remanded, unless appellee shall, within ten days, remit to the sum of $375.00, in which case the judgment will be affirmed for that amount, in either case at the costs of appellee.